## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Samuel Rowe and Estella Rowe, )
On behalf of themselves and all )
Others similarly situated, )
                                         )
                Plaintiff, )
                                         )
vs. )
                                         )
Bankers Life and Casualty )
Company and Bankers Life )
Insurance Company of Illinois, )
                                         )
            Defendant(s). )

FILED: JANUARY 26, 2009
09CV491
JUDGE DOW
Case No. MAGISTRATE JUDGE ASHMAN

TC

## COMPLAINT

Plaintiff Samuel Rowe and Estella Rowe ("Plaintiffs") bring this action against Bankers Life and Casualty Company and Bankers Life Insurance Company of Illinois (collectively referred to as "Defendants"), on behalf of themselves and all others similarly situated persons who were sixty-five (65) years of age or older ("Senior Citizens") at the time he or she purchased deferred annuity products issued by Bankers Life and Casualty Company and were damaged thereby ("Class Members"). Plaintiffs allege as follows:

### JURISDICTION AND VENUE

1.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1332(d)(2) because:

    (a)    The amount in controversy of all Class Members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interests and costs and less than one-third of all Class Members are citizens of California. *See* Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332, Pub. L. No. 109-2, 119 Stat. 4 (2005);

(b) Many members of the putative class are citizens of states other than Illinois, which is the Defendants' state of citizenship; and

(c) All other factual conditions precedent necessary to empower this Court with subject matter and personal jurisdiction have been satisfied.

2.    Venue is proper in this Court pursuant to 28 USC § 1391(a) because one or more of the Defendants is subject to personal jurisdiction in this District.

## PARTIES

3.    Plaintiff Samuel and Estella Rowe were both over the age of 65 at the time the complaint was filed, and both are an "elder" as defined by California Welfare & Institutions Code § 15610.27. Mr. and Mrs. Rowe live in and at all times mentioned herein were citizens of West Hills, California.

4.    Defendant Bankers Life and Casualty Company is an Illinois corporation with its principal place of business in Chicago, where the majority of Defendant's total activities occur.  With 160 branch offices nationwide, it specializes in the sale of life insurance, long-term care insurance, and annuities to the senior population. Bankers Life and Casualty Company serves nearly 1.4 million policyholders and manages over $9 billion in assets.  Additionally, it is both authorized to, and does transact substantial business in the state of California.

5.    Defendant Bankers Life Insurance Company of Illinois was an affiliate of Bankers Life and Casualty Company.  It served as an underwriter of life insurance and markets products and services to consumers contracting with Bankers Life and Casualty Company.  Bankers Life Insurance Company of Illinois was an Illinois corporation with its principal place of business in Chicago, where the majority of Defendant's total activities occur. In or about 2007, Bankers Life Insurance Company of Illinois merged

2

with Bankers Life and Casualty. As a result of that merger, Bankers Life and Casualty assumed the obligations, debts and liabilities of Bankers Life Insurance Company of Illinois, including those arising from the allegations set forth in this complaint.

6.     Defendants Bankers Life and Casualty Company and Bankers Life Insurance Company of Illinois are referred to herein collectively as "Bankers Life."

## FACTUAL ALLEGATIONS

### Introduction

7.     This class action seeks redress for the Defendants' improper and misleading scheme to market and sell deferred annuities to Senior Citizens by: (1) failing to fully disclose all material facts and risks associated with the deferred annuity products; (2) misusing Senior Citizens' confidential financial information to identify available assets for deferred annuity sales; (3) using uniformly misleading marketing materials; (4) promoting deferred annuities to Senior Citizens when they are fundamentally inferior and far less valuable than readily available alternative investment products; (5) failing to adequately disclose the substantial principal risks resulting from extended maturity dates, surrender penalties and other restrictions which limit access to the annuity proceeds until a date beyond the Senior Citizens' actuarial life expectancy; and, (6) other acts according to proof.

### Factual Background

8.     On August 16, 2007, two unsolicited sales agents approached the then 81 year-old Mr. Rowe and his wife. These agents of the defendants and each of them handed out business cards bearing the Bankers Life's logo and described a highly structured sales team, in which they participated as supervisor and trainee. Together, the

3

two agents successfully pitched an investment opportunity; equity-indexed annuities issued by Bankers Life and Casualty Company.

9.     The equity-indexed deferred annuity sold to the Rowes would have matured upon Mr. Rowe's ninety-ninth birthday, well-beyond Mr. Rowe's actuarial life expectancy. By the terms of his policy, the Rowes were not permitted to withdraw funds before this maturity date. In fact, the policy imposed substantial withdrawal penalties and limitations on withdrawals for the first ten years of their investment.

10.     The deferred annuity purchased by Mr. and Mrs. Rowe was marketed by the Defendants as a safe and secure investment that pays competitive rates of return. In reality, Bankers Life deferred annuities are illiquid and poorly performing products that are wholly inappropriate investments for Senior Citizens. The annuity offered the Rowes two choices: surrender the policy and face substantial surrender charges or live without access to funds with the false expectation of seeing their investment mature.

11.     Plaintiffs Samuel and Estella Rowe bring this class action to obtain redress for Defendants' improper and misleading scheme to market and sell deferred annuities and similar financial products to Senior Citizens through a coordinated network of sales agents. Defendants devised and implemented a deceptive scheme to sell deferred annuities to Senior Citizens. Defendants failed to fully disclose all material facts and risks associated with the deferred annuity products and inappropriately misused Senior Citizens' confidential financial information to identify available assets for deferred annuity sales – information falsely obtained under the guise of providing "estate" or "financial planning services."

12.     Defendants promulgated this deceptive scheme through uniformly misleading

4

marketing materials that failed to disclose, *inter alia*, numerous materially adverse facts which show Defendants' deferred annuities to be both fundamentally inferior and far less valuable to seniors than readily available alternative investment products. Defendants also failed to adequately disclose that Senior Citizens who purchased deferred annuities incurred substantial principal risks as a result of extended maturity dates, surrender penalties and other restrictions which limited access to the annuity proceeds until a date beyond the annuitant's actuarial life expectancy. These and all other acts and omissions alleged herein were carried out by the Defendants' corporate officers, managers, employees and agents who authorized and ratified all of the conduct set forth herein.

13.     Plaintiffs allege that the Defendants' deferred annuity sales practices violate elder abuse laws, unfair competition and deceptive trade practice laws, unfair advertising laws, and the implied covenant of good faith and fair dealing.

14.     By this action, Plaintiff seeks the following forms of equitable relief:

A. First, Plaintiffs seek an order enjoining Defendants from, among other things, selling a deferred annuity to a Senior Citizen without first disclosing all material facts regarding the key attributes and risks associated with the annuity product. Additionally, it must be determined that the deferred annuity is appropriate for the prospective purchaser;

B. Plaintiffs further seek to enjoin Defendants from selling deferred annuity products to Senior Citizens that contain surrender penalties and other restrictions; and

C. In addition, Plaintiffs seek rescission, disgorgement of ill-gotten profits, reformation and any other form of equitable relief as may be appropriate to redress Defendants' wrongful conduct in selling senior citizens deferred annuity products that are inferior investments and detrimental to Senior Citizens.

### Defendants' Deferred Annuity Sales Scheme
### Targeting the Senior Market

15.     Bankers Life "turned its attention to a new frontier, America's growing senior

population."[1] To capitalize on the profitable and vulnerable senior market, Bankers Life gradually expanded its portfolio of retirement savings products. In 1977, it entered the annuity business. Within four (4) years prior to this lawsuit, Defendants orchestrated a fraudulent and deceitful scheme intentionally targeting vulnerable Senior Citizens for the sale of Bankers Life annuities.

16.     Bankers Life's scheme to sell deferred annuities to Senior Citizens without first fully disclosing their disadvantages begins with its direct training and control of its insurance agents. Banker's Life exercises both direct and indirect control over the manner and methods by which its agents are authorized to market annuities on behalf of Banker's Life. The control exercised includes, among other things that: (1) the agent agrees to abide by all policies, practices, and procedures adopted by Bankers Life, (2) any authority given to the agent is further subject to the provisions and limitations contained in the contract and Bankers Life's manual, rate books, rules, and regulations, and (3) no promotional material or advertising in any form shall be made without Bankers Life's prior consent.

17.     Defendants further conduct extensive agent training programs which provide classroom time, detailed sales scripts, and a step-by-step sales model that Defendants require their agents to follow. Bankers Life further provides its agents with sales brochures, application forms, and an extensive manual, including marketing and advertisement guidelines, sales rewards programs, and guidelines in how to address and sell to Senior Citizens. Defendants thus provide its agents with the necessary training, support, and materials needed to perpetuate this tightly controlled and calculating sales scheme to target Senior Citizens.

---

[1] www.bankers.com/Web/AboutUs-125thAnniversary.aspx.

18. Defendants' marketing materials deceptively highlight features that appeal to Senior Citizens without disclosing the material facts from which a consumer could discern that the Bankers Life deferred annuities are in reality illiquid and poorly performing products, carrying substantial principal and market risks.

19. While helping Senior Citizens complete their purported estate or financial forms, Bankers Life agents garner their trust and confidence while simultaneously determining whether the he or has the available assets to purchase Defendants' deferred annuity products. The agents do not disclose that their primary purpose is to sell them a deferred annuity.

20. Senior Citizens are an ideal target for Defendants' scheme to sell deferred annuities because they are particularly susceptible to Defendants' unfair and unlawful sales practices. Many Senior Citizens have diminished abilities to understand complex investment transactions, have concerns about risky investment, and have fears about outliving their assets. Defendants pursue Senior Citizens with sales tactics that scare, coerce, harass, force, and/or induce Senior Citizens into converting their liquid assets and investments into deferred annuities. Defendants' contracts are drafted so that the average person, let alone an elderly person, cannot readily understand their terms.

### Omissions of Material Facts

21. To perpetrate their scheme to defraud Senior Citizens, Defendants intentionally conceal, omit and fail to fully disclose critical information about the attributes and true risks of the Bankers Life deferred annuities. If disclosed, said attributes reveal that the Bankers Life annuities are inferior to comparable investment products and inappropriate for Senior Citizens.

22.    The facts were and are that Defendants fail to disclose critical product characteristics including: (1) product features, cost and performance; (2) investment risk; and (3) illiquidity of investment.

23.    Specific omissions include that:

(a)    Bankers Life deferred annuities are worth substantially less than the purchaser's original invested funds and, as a result, senior Class Members who purchase Bankers Life deferred annuities lose substantial value on the date of purchase. Class Members who purchase Bankers Life deferred annuities lose a percentage of their investment dollars to cover sales agents' commissions, Bankers Life's profits and other undisclosed expenses;

(b)    Bankers Life pays commissions to its sales agents that greatly exceed commissions paid on mutual funds or other more liquid and higher-yielding investments. Bankers Life recoups these exorbitant commission costs from Class Members through undisclosed actuarial and accounting manipulations that adversely impact the performance of the annuities;

(c)    The effective cost of owning a Bankers Life deferred annuity is far higher than the costs associated with readily available alternative investments. Because Bankers Life does not disclose the true effective cost of owning a Bankers Life deferred annuity that is analogous to the fully disclosed annual expense ratios of a mutual fund or the annual expenses of a variable annuity, Class Members are unable to understand the risks, costs and minimal benefits of the Bankers Life deferred annuities;

(d)    The Bankers Life deferred annuities have stiff surrender charges that effectively grow over time, relative to the value of alternative risk-free investments, and to amounts that are far higher than the inadequate disclosures in Bankers Life's consumer brochures and annuity contracts;

(e)    Bankers Life pays purchasers of equity-indexed annuities only a fraction of the actual gains in the indexed markets. Bankers Life fails to meaningfully disclose the manner in which the index margins interact with changes in the market indices to determine the actual returns to Class Members;

(f)    Bankers Life used unsupported actuarial assumptions concerning surrender and annuitization rates, expenses and investment performance it could not sustain and as a result would be required to reduce initial interest rates, caps, and participation rates available to Class Members;

(g)    Future performance of the Bankers Life annuities was dependant on Bankers Life's ability to collect surrender charges and early annuitization penalties;

(h) Bankers Life deferred annuities carry front end and/or back end loads resulting from undisclosed bonus forfeiture policies, unduly steep early surrender charges and bonus forfeitures;

(i) Bankers Life deferred annuities are not FDIC insured, guaranteed by any bank, and the annuities carry possible investment risk.

(j) Bankers Life mischaracterizes its deferred annuities as flexible premium contracts even though no premiums were assumed to be paid after the first policy year in order to pay lower minimum guaranteed cash values; and

(k) Other more liquid and lucrative investments exist with less initial loss and equal risk protection if held for the same period of time as Bankers Life policy owners to hold its annuities to avoid surrender penalties that effectively reduced the principal investment.

24. In marketing the deferred annuity purchased by Plaintiffs and other Class Members, Defendants fail to adequately disclose that the annuity owner will incur substantial surrender charges and penalties if the policy is cancelled or surrendered before the policy's maturity date, often ten (10) to twenty (20) years after the first payment. Defendant's scheme is, thus, particularly pernicious because unsuspecting Senior Citizens, upon purchasing Bankers Life deferred annuities, are effectively locked in without meaningful access to their funds beyond their life expectancies due to such significant penalties. Defendants' deferred annuity contracts obscure and hide penalty provisions by, *inter alia,* the use of false and misleading headings, indistinguishable text characteristics, confusing verbiage, inconsistent and ambiguous definitions, and "chain" provisions requiring the reader to refer from one provision to another provision in a concerted effort to conceal these penalties.

25. The standardized annuity contracts and uniform marketing and sales materials prepared, approved and disseminated by Defendants to the Plaintiffs and Class Members were deceptive and omitted the above referenced material information and/or contained

insufficient disclosure of the Defendants' true sales practices. Without disclosure of the foregoing material facts and information, these annuity contracts and marketing materials were inherently false, misleading and deceptive.

## DISCOVERY RULE AND EQUITABLE TOLLING

26.     Any applicable statutes of limitations have been tolled by Defendants' failure to disclose the facts alleged herein.  Defendants failed to adequately disclose material information to Plaintiffs and the Class about the deferred annuities that they purchased. This information is essential to the pursuit of these claims and was not known to Plaintiffs without fault or lack of due diligence on his part.  Due to the undisclosed nature of Defendants' practices, Plaintiffs could not have discovered them earlier.

27.     Defendants hold themselves out as financial experts possessing special knowledge necessary to interpret and understand the complex deferred annuity policies they offered.  Defendants induced Plaintiffs and the Class to purchase deferred annuity policies, holding themselves out as confidants of Plaintiffs and Class Members, and thereby encouraging Plaintiffs and Class Members to reveal confidential, personal, and proprietary information, including private financial information.  Plaintiffs and the Class reposed confidence and trust in Bankers Life sales agents, authorized them to act on their behalf in procuring their policies, and relied on their alleged superior expertise in recommending appropriate investment forums for them.

28.     The Defendants, however, have used their positions as confidants and trusted financial advisors by misleading Plaintiffs and the Class into believing that Defendants were not committing any wrongful acts against them.   Through the Defendants' representations and the concealment of important information, Plaintiffs and Class

Members to suspect nor were put on inquiry that Defendants' business practices were causing them injury until shortly before the filing of this Complaint.

29.    In addition, the Defendants did not uphold their duty of good faith and fair dealing by failing to disclose information about Plaintiffs' and the Class' deferred annuities, essential to their bringing these claims.

30.    As a result of the foregoing, Plaintiffs and the Class had no reason to suspect nor would a reasonable person be put on inquiry that Defendants were engaging in any wrongdoing against them until recently. For the reasons alleged above, the vast majority of Class Members still do not know or have been put on inquiry notice that Defendants are engaging in any wrongdoing, and that the injuries that they have sustained were caused by Defendants' unfair and unlawful business practices.

31.    The statute of limitations applicable to any claims that Plaintiffs or other Class Members have brought or could bring as a result of the conduct alleged herein has been tolled as a result of Plaintiffs and Class Members' inability to discovery nor be put on inquiry notice that Defendants were engaging in any unfair and unlawful business practices. In addition, Plaintiffs and the Class did not and could not have discovered their causes of action until the time alleged below, thereby tolling any applicable statute of limitations. Defendants are estopped from relying on any statutes of limitations.

## CLASS ALLEGATIONS

32.    Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). The class of persons which Plaintiffs seeks to represent is defined as:  all persons in the State of California who at the age of 65 or older

purchased one or more Bankers Life deferred annuities and who have suffered or could suffer a penalty and/or surrender charge, including those incurred on death for accessing their money before its maturity date.

33.    Excluded from the Class are Defendants and their affiliates, predecessors, successors, officers, directors, agents, servants, or employees, and the immediate family members of such persons. Also excluded is any trial judge who may preside over this action.

34.    Plaintiffs assert class and representative claims against each Defendant under Cal. Bus. & Prof. Code §§17203, 17204 and 17535. Plaintiffs seek to enjoin Defendants from engaging in the unfair and unlawful business practices and false advertising alleged in this Complaint, and to require Defendants to restore all monies wrongfully obtained through their false advertising and unfair and unlawful business practices to the affected members of the Class and general public.

35.    The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs reasonably estimate that the Class Members may number into the thousands or even tens of thousands. The precise number of Class Members and their addresses are unknown to Plaintiffs, but can be ascertained through appropriate discovery of Defendants' records. Class Members may be notified of the pendency of this action by publication and/or other notice.

36.    There is a well-defined community of interest in the relevant questions of law and fact affecting putative Class Members. Common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

(a) Whether Defendants improperly solicited, referred, marketed, issued, or sold deferred annuities to senior citizens, including Plaintiffs and the Class;

(b) Whether Defendants committed unfair and unlawful business practices, in violation of Cal. Bus. & Prof Code § 17200, in their marketing, promotion, solicitation, sales and issuance of deferred annuities to Plaintiffs and Class Members;

(c) Whether Defendants engaged in unfair and unlawful advertising in violation of Cal. Bus. & Prof Code § 17500;

(d) Whether Defendants committed elder abuse as defined in Cal. Welf. & Inst. Code § 15600 et seq.;

(e) Whether Defendants were negligent in their marketing, promotion, solicitation, sales and issuance of deferred annuities to Plaintiffs and Class Members;

(f) Whether the Defendants breached their common law fiduciary duties to Plaintiffs and the Class;

(g) Whether Plaintiffs and the Class are entitled to damages; and

(h) Whether Plaintiffs and the Class are entitled to injunctive relief.

37. The claims of Plaintiffs are typical to those of the Class.

38. The claims of Plaintiffs and other Class Members have a common origin and share a common basis. The claims originate from the same wrongful conduct by Defendants, including their own wrongful conduct, as well as conduct by others that aided and abetted the wrongful conduct of others.

39. Plaintiffs' claims are typical of those of the absent Class Members. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

40. Plaintiffs' claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class claims will be prosecuted with diligence

and care by Plaintiffs as representatives of the Class.

41.    Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Class.

42.    Plaintiffs are willing and prepared to serve the Court and proposed Class in a representative capacity with all of the obligations and duties material thereto.

43.    Plaintiffs have retained the services of counsel, identified below, experienced in complex class-action litigation and in particular class actions involving insurance matters, who will adequately prosecute this action, and will otherwise assert, protect, and fairly and adequately represent Plaintiffs and all absent Class Members.

44.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the Class. Such incompatible standards of conduct and varying adjudications on the same essential facts, proof, and legal theories would also create and allow the existence of inconsistent and incompatible rights within the Class.

45.    Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   (a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class member has at stake;

   (b) Very little individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   (c) The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

(d) The proposed class action is manageable.

46. Therefore, class treatment of Plaintiffs' claims is appropriate and necessary.

### FIRST CLAIM FOR RELIEF
**Violation of California Business & Professions Code Section 17200 et seq.**

47. Plaintiffs and the Class repeat and reallege all prior allegations contained herein, as if fully set forth herein. California Business and Professions Code §17200 prohibits any "unlawful . . . business act or practice." Defendants have violated §17200's prohibition against engaging in an unlawful act or practice by:

    (a) Violating Cal. Bus. & Prof. Code § 17500 *et seq.* (further alleged in the Second Cause of Action);

    (b) Violating Cal. Welf. & Inst. Code §§15610.30 (further alleged in the Fifth Cause of Action);

    (c) Violating the California Insurance Code through the following actions:

        (i) Failing to provide full, adequate or material disclosure of the consequences of purchasing deferred annuities including the risks involved, surrender charges, undisclosed commissions and other consequences as set forth herein, in violation of Cal. Ins. Code §§ 330-334, 762, 780, 789.8 et seq.;

        (ii) Failing to provide full or adequate disclosure that the deferred annuity sold is not backed by, an obligation of, guaranteed or insured by the federal government or one of its agents, the Federal Deposit Insurance Corporation, or by the depository institution or one of its affiliates, in violation of Cal. Ins. Code §§ 761-762;

        (iii) Failing to provide full or adequate disclosure that the deferred annuity sold involves investment risk including the potential that principal may be lost and the product may decline in value, in violation of Cal. Ins. Code §§ 761-762 and 10127.11;

        (iv) Failing to conduct themselves with persons over the age of 65 in good faith, honesty, and fair dealing, in violation of Cal. Ins. Code § 785 *et seq.*

        (v) Issuing or approving advertising that was false or misleading about the nature of their uniform sales presentation of deferred annuities or

failing to disclose leads, such as bank tellers or sales agents, that generate contact with a person over the age of 65, in violation of Cal. Ins. Code § 787 et seq.;

(vi)     Failing to provide full or adequate disclosure to a person over the age of 65 regarding the sale or liquidation of any stock, bond, IRA, certificate of deposit, mutual fund, annuity or other asset to fund the purchase of the deferred annuity sold involves tax consequences, early withdrawal penalties, investment risk, or other costs or penalties and should consult with a legal or financial professional before purchasing, in violation of Cal. Ins. Code §§ 789.8;

(vii)    Failing to provide full and adequate notice of information practices to all applicants and policyholders in connection with their purchase of a deferred annuity, including the collection of personal information in violation of Cal. Ins. Code § 791.04; and

(viii)   Failing to provide full and adequate disclosure of information concerning a deferred annuity's surrender charge period and penalties, in violation of Cal. Ins. Code § 10127.13.

(d) Violating the Code of Federal Regulations through the following actions:

(i)      Failing to provide full, adequate or meaningful disclosure that the deferred annuity sold is not backed by, an obligation of, guaranteed or insured by the federal government or one of its agents, the Federal Deposit Insurance Corporation, or by the depository institution or one of its affiliates, in violation of 12 C.F.R. § 14.30; and

(ii)     Failing to provide full, adequate or meaningful disclosure that the deferred annuity sold involved investment risk, the fact that there was an investment risk, including the potential that principal may be lost and the product may decline in value, in violation of 12 C.F.R. §§ 14.30 and 14.40;

48.     Section §17200 also prohibits any "unfair . . . business act or practice by engaging in the activities and conduct alleged in the preceding paragraphs.

49.     As detailed in the preceding paragraphs, Defendants sell deferred annuities to Plaintiffs and the Class with terms, conditions, and under circumstances that violate federal and state law and the fundamental policies delineated in statutory provisions. Defendants gained the trust of Plaintiffs and the Class, had access to their private

financial information, and induced them into moving their funds into annuities even though deferred annuities with these terms are inappropriate investments for Senior Citizens and even though such terms were inadequately disclosed to them. As a result, Defendants engaged in unfair business practices prohibited by Cal. Bus. & Prof. Code § 17200 *et seq.*

50.     Section 17200 also prohibits any "fraudulent ... business act or practice." As detailed in the preceding paragraphs, Defendants' conduct was likely to deceive Plaintiffs, the Class and the public. Defendants have made misrepresentations about deferred annuities to Senior Citizens. Defendants knew were likely to be deceptive and misleading for seniors, concealing from seniors the disadvantages of the deferred annuity for person of their age, including the fact that the annuity would tie up their moneys beyond their actuarial life expectancy and carried steep surrender changes for a lengthy period of time. Defendants gained the trust of Plaintiffs and the Class, had access to their bank information, and through their unscrupulous sales practices, induced them into moving their funds into annuities, all the time knowing that their sales practices were likely to be misleading and deceptive for seniors.

51.     Defendants aided and abetted each other in accomplishing the wrongful acts. In doing so, Defendants acted with awareness of their conduct and knew or should have known that their conduct would substantially further the wrongful conduct.

52.     As a result of Defendants' practices, Plaintiffs and other Class Members have incurred actual financial losses and damages including diminished access to needed funds, fees, charges and penalties that they would not have otherwise incurred; expenses to hire a conservator, financial planner and/or attorneys; and the lost value in previous

17

investments that they would not have otherwise incurred.

53.     The Cal. Bus. & Prof. Code authorizes injunctive relief. Unless Defendants are enjoined from continuing to engage in the unlawful, deceptive and unfair business practices described above, members of the general public residing within the United States, including California, will continue to be damaged.

54.     Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and deceptive business practices and requiring them to return the full amount of money improperly collected – including, but not limited to, commissions and profits from the sale of annuities, income derived from penalties and fees – to all those who have paid them, plus interest and attorneys' fees.

## SECOND CLAIM FOR RELIEF
### Violation of California Business & Professions Code Section 17500 et seq.

55.     Plaintiffs and the Class incorporate by reference all allegations contained in the paragraphs above as if set forth separately in this Claim for Relief. California Business and Professions Code §17500 prohibits the dissemination of "false and misleading statements" with the intent to perform services or otherwise induce the public to enter into any obligation related thereto.

56.     Defendants knew or should have known that their annuity product advertisements directly or indirectly to seniors are false or misleading.  Letters and marketing materials prepared by Defendants, as well as websites, are tailored to attract retired individuals, aged 65 and older, who have assets and are relatively unsophisticated in investing.  The marketing materials are designed to exploit the seniors' insecurities about their finances long-term care, taxes and estates after they die.

57. Defendants failed to disclose to Plaintiffs, the Class, or the general public that deferred annuities with these terms are inappropriate investments for Senior Citizens, instead providing virtually uniform messages that such annuities are perfect investments for the elderly. Defendants failed to disclose that deferred annuities may be inappropriate for seniors because of their life expectancies and their need for liquidity in the event of health care emergencies, sudden need to reside in a nursing home, or other financial crises.

58. In making and disseminating these statements and advertisements, Defendants knew or should have known that they were untrue or misleading.

59. Defendants aided and abetted each other in accomplishing the wrongful acts. In doing so, Defendants acted with awareness of their conduct and knew or should have known that their conduct would substantially further the wrongful conduct.

60. As a result of Defendants' misconduct as alleged herein, Plaintiffs have incurred the following types of actual financial losses and damages:

(a) Plaintiffs had to pay penalties, fees, charges, and deductions as a result of following the advice and recommendations of Defendants that they would not have otherwise incurred if their investments and holdings had remained in the form in which they existed before Plaintiffs followed the advice and recommendations of Defendants. Moreover, even if the form and instruments of Plaintiffs investments and holdings were changed to other, appropriate forms or instruments, the Plaintiffs would not have incurred the penalties, fees, charges, and deductions they incurred;

(b) Plaintiffs incurred penalties for withdrawal and transfer of funds that they would not have incurred except for the fact that they followed the advice and recommendations of Defendants;

(c) Plaintiffs incurred fees and charges for the purchase of inappropriate financial products that they would not have incurred except for the fact that they followed the advice and recommendations of Defendants; and

(d) Plaintiffs were assessed taxes, assessments, and penalties that they would not have otherwise incurred but for their reliance on the advice and recommendations of Defendants.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs, the Class, and the general public have suffered monetary and non-monetary damage.

62.     Unless Defendants are enjoined from continuing to engage in such wrongful actions and conduct, members of the general public will continue to be damaged by Defendants' false and misleading advertising.

63.     So as not to be unjustly enriched by their own wrongful actions and conduct, Defendants should be required to disgorge and restore to Plaintiffs, members of the Class, and the general public all monies wrongfully obtained by Defendants as a result of their false and misleading advertising, together with interest.

### THIRD CLAIM FOR RELIEF
**Breach of Common Law Fiduciary Duty**

64.     Plaintiffs and the Class incorporate by reference all allegations contained in the paragraphs above as if set forth separately in this Claim for Relief.

65.     By reason of their purported positions as objective financial advisors acting in Plaintiffs' best interests, with access to Plaintiffs' personal and confidential information, including bank account information, and because of their superior knowledge and ability to manipulate and control Plaintiffs and other seniors' finances and legal status, the Defendants assumed fiduciary duties owed to Plaintiffs and the Class. The Defendants also assumed fiduciary duties by assuming the position of a trusted advisor providing investment and financial counseling and acting as an insurance agent in selecting and purchasing insurance products.

66.     Defendants hold themselves out as insurance experts, possessing the special

knowledge needed to interpret and understand the complex deferred annuity policies they offer. Plaintiffs and the Class reposed confidence and trust in Defendants, authorized Defendants to act on their behalf in procuring their policies, and relied on Defendants' superior expertise in recommending appropriate investment instruments for them. Plaintiffs and the Class thus depended on the good faith and performance of Defendants. Defendants not only accepted but solicited that confidence and trust through virtually uniform misrepresentations in their publicly available materials and communications.

67.    Further, the Bankers Life sales agents are insurance brokers or agents characterized by elements of public interest thereby subjecting Defendants to more stringent standards of conduct. Defendants, in inducing Plaintiffs and the Class to purchase deferred annuity policies, hold themselves out as confidants of Plaintiffs and Class Members, encouraging Plaintiffs and Class Members to reveal confidential, personal and proprietary information, including financial and medical information. This confidential and proprietary information includes that contained in financial statements, bank accounts, tax returns, and numerous other documents and related personal information.

68.    In addition, Defendants owe a fiduciary duty to Plaintiffs and the Class by virtue of their control, ownership, and oversight of Bankers Life sales agents and the materials they use to gain Plaintiffs' and the Class' trust, induce their reliance, and sell the deferred annuities.

69.    Based on the foregoing, Defendants owe Plaintiffs and Class Members common law fiduciary duties, including the duty of good faith and fair dealing, the duty

of full and fair disclosure, the duty of loyalty and the duty of care arising out of their relationship with Plaintiffs and Class Members.

70.     Defendants also had a duty to provide complete and truthful information to Plaintiffs and the Class and to provide investment advice in a fair, just and equitable manner.

71.     As set forth above, the Defendants violated and breached their duties of care, loyalty, truth, reasonable inquiry, oversight, good faith, fair dealing and supervision.

72.     Defendants used their positions as confidants and trusted financial advisors by misleading Plaintiffs and the Class about the unsuitability of deferred annuities for senior citizens, especially the lack of access to their funds until a date beyond their life expectancy and the steep surrender charges associated with accessing their funds before that time. Instead, all Defendants provided Plaintiffs and Class Members with misleading and incomplete information about the deferred annuity products they purchased.

73.     Defendants performed the acts complained of above with the intent of gaining their own financial advantage to the disadvantage of Plaintiffs and the Class.

74.     Defendants aided and abetted each other in accomplishing the wrongful acts. In doing so, Defendants acted with awareness of their conduct and knew or should have known that their conduct would substantially further the wrongful conduct.

75.     In performing these acts, each Defendant either ratified the conduct of the other Defendant, acted as the other Defendant's agent, or both.

76.     As a result of Defendants' wrongful conduct, Plaintiffs and the Class suffered and continue to suffer economic and non-economic losses, all in an amount to be

determined according to proof at trial.

77.     Upon information and belief, the wrongful acts of Defendants were done maliciously, oppressively, and with the intent to mislead. Plaintiffs and the Class are entitled to punitive and exemplary damages in an amount to be ascertained according to proof, which is appropriate to punish and set an example of the Defendants under Cal. Civ. Code §3294 et seq.

78.     Plaintiffs and the Class are further entitled to an accounting by Defendants with respect to all compensation paid or received by them.

### FOURTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing

79.     Plaintiffs and the Class incorporate by reference all allegations contained in the paragraphs above as if set forth separately in this Claim for Relief

80.     As alleged above, the relationship of insurer and insured exists between Insurer Defendants and Plaintiffs and the Class. Also, as alleged above, a fiduciary relationship exists between the Defendants and the Plaintiffs and the Class.

81.     The relationship of insurer and insured creates a duty, implied in law, extending from Defendants to Plaintiffs and the Class to deal fairly with Plaintiffs and in good faith. In every insurance policy, there is an implied obligation of good faith and fair dealing that the insurance company will not do anything to injure the right of the insured to receive the benefits of the agreement. To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests. Defendants breached that duty of good faith and fair dealing in several ways, including but not limited to, the following:

(a)  Using materials likely to be deceptive and misleading, which failed to

adequately disclose the disadvantages for a senior to buy a deferred annuity, including tax consequences and penalties, and lack of access to their investments within their lifetime;

(b) Failing to disclose the significant commissions sales agents and employees earn from the sale of deferred annuities;

(c) Obscuring or downplaying any references to the surrender charges, lengthy maturation period and/or penalties that occurred on death;

(d) Drafting and using form annuity contracts that fail to adequately advise seniors of the 30-day trial period, the risk of their investment, or location of information relating to the surrender period and associated penalties;

(e) Failing to consider Plaintiffs welfare above their own;

(f) Failing to comply with their internal policies and/or industry standards and by issuing age exceptions without performing full and complete investigations as to appropriateness of the deferred annuities sold to Plaintiffs and the Class, or the methods by which they were sold;

(g) Failing to fully and accurately perform their underwriting duties;

(h) Failing to competently train and supervise their sales agents and/or employees; and

(i) Failing to adequately review marketing and sales materials prior to their presentation to Plaintiffs and the Class, or approving deceptive misleading, or inadequate marketing and sales materials.

82.    As a proximate result of the aforementioned acts and omissions of Defendants, Plaintiffs and the Class have suffered damages in a sum to be proven at the time of trial. It has also become reasonably necessary for Plaintiffs to retain counsel to recover amounts due under the contracts.

83.    On information and belief, Defendants performed the aforementioned acts maliciously and oppressively, entitling Plaintiffs and the Class Members to punitive damages in an amount appropriate to punish Defendants. Although such award may be based upon the financial condition of Defendants, each Class Member would only be

entitled to receive a pro rata portion of any punitive damage award. As such, the claim of

Plaintiffs, and the individual claim of each and every Class Member do not exceed

$75,000.

### FIFTH CLAIM FOR RELIEF
### Negligent Misrepresentation

84.     Plaintiffs and the Class incorporate by reference all allegations contained

in the paragraphs above as if set forth separately in this Claim for Relief.

85.     Defendants owed various duties to Plaintiffs and the Class as a result of

the insurer/insured and/or fiduciary relationship between Defendants and Plaintiffs and

the Class.

86.     As alleged above, the relationship of insurer and insured exists between

the Insurance Defendants and Plaintiffs and the Class. Further, the relationship of

fiduciary or other special/confidential relationship exists between the Defendants and the

Plaintiffs and the Class.

87.     Defendants negligently misrepresented the appropriateness of their

deferred annuity product to Plaintiffs and the Purported Class. Defendants negligently

and carelessly provided financial investment advice, counseling and recommendations

(or negligently failed to supervise or monitor the representations made) to Plaintiffs by

urging Plaintiffs and the Class to purchase financial products that were inappropriate for

Plaintiffs given their age. Defendant negligently and carelessly failed to advise Plaintiffs

and the Class of the potential and likely financial ramifications of purchasing the

deferred annuities that foreseeably resulted in Plaintiffs and the Class incurring fees,

costs, penalties and charges to their detriment without any likely benefit to them.

Defendants negligently and carelessly marketed advertised, issued, approved, and/or sold inappropriate financial products to Plaintiffs and the Class.

88.     Defendants negligently failed to comply with standards in the banking, financial, and insurance industries by failing to properly disclose the risks set forth above. Defendants negligently failed to disclose charges and fees, inability to access funds and other problems associated with deferred annuities.

89.     Defendants' misrepresentations and omissions, and each of them, as described hereinabove, were made with the intent that Plaintiffs and the Purported Class rely on them.

90.     Plaintiffs and the Purported Class were unaware of the falsity of said representations and the existence of said omissions and reasonably and justifiably acted upon Defendants' representations.

91.     As a proximate result of these actions by Defendants, Plaintiffs suffered the losses and damages set forth in Plaintiff's Pray for Damages herein.

### SIXTH CLAIM FOR RELIEF
### Financial Elder Abuse, Cal. Welfare & Institutions Code Section 15600 et seq.

92.     Plaintiffs and the Class incorporate by reference all allegations contained in the paragraphs above as if set forth separately in this Claim for Relief.

93.     Defendants' conduct constitutes financial abuse under Cal. Welf. & Inst. § 15657.5 et seq., as defined in Cal. Welf. & Inst. Code § 15610.30.  California Welfare and Institutions Code § 15610.30 provides in pertinent part:

(a)     "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

   (i)     Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both; and

      (ii)     Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

94.    Plaintiffs and each member of the class were 65 years of age or older at all times relevant to this action.

95.    Defendants stand in a fiduciary relationship with the named Plaintiffs and the Class Members for all of the reasons alleged in the third claim for relief. Specifically, and without limiting the scope of prior allegations, Defendants advertise their competence and ability to manage the estate planning, insurance, and financial affairs of the Named Plaintiffs and the Purported Class Members.

96.    At all relevant times, Defendants took and/or assisted in taking personal property from Plaintiffs Samuel and Estella Rowe and the Class Members in bad faith for a wrongful use and/or with the intent to defraud by unfairly manipulating the class into purchasing deferred annuities with high surrender charges.

97.    Defendants aided and abetted one another in effectuating the wrongful acts. Each Defendant acted with an awareness of its wrongdoing and realized that its conduct would substantially assist in accomplishing these wrongful acts.

98.    In performing these acts each Defendant either acted as agents of each other or ratified such acts, or both.

99.    Defendants' conduct was reckless, oppressive, and malicious within the meaning of Cal. Welf. & Inst. Code § 15657 *et seq.* in that Defendants disregarded internal age exemption practices, industry standards and failed to adequately disclose material facts to elderly applicants and annuitants to facilitate increased sales to seniors and thereby increase their profits at the expense of senior citizens.

100. Under Cal. Welf. & Inst. Code § 15657.5 *et seq.*, Defendants are liable for reasonable attorneys' fees and costs for investigating and litigating this claim.

101. Under Cal. Civ. Code §3294 and Welf. & Inst. Code §15657.05(a), Defendants are liable for punitive damages.

102. Under Cal. Civ. Code §3345, Defendants are liable for treble damages and penalties because: (a) Defendants knew or should have known their conduct was directed as to a senior citizen; (b) Defendants' conduct caused senior citizens to suffer substantial loss of property set aside for retirement, and assets essential to their health and welfare; (c) Plaintiffs and the Class are senior citizens who are more vulnerable than other members of the public to Defendants' conduct because of their age, impaired understanding, impaired health or restricted mobility; and (d) Plaintiffs and the Class actually suffered substantial physical, emotional and economic damages resulting from Defendants' conduct.

103. Under Cal. Welf. & Inst. Code §§15657 et seq. and 15657.05 et seq., Defendants are liable to Plaintiffs and the Class for their pain and suffering.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the Class, and the general public, prays for judgment against Defendants as follows:

A. For a temporary, preliminary and permanent order for injunctive relief enjoining Defendants from pursuing the practices complained of above;

B. For a temporary, preliminary and permanent order for injunctive relief requiring Defendants to undertake an immediate public information campaign to inform members of the general public as to their prior practices and notifying the members of

the proposed Class of the potential for restitutionary relief;

C.      For an order requiring disgorgement and restitution of Defendants' ill-gotten gains and to pay restitution to Plaintiffs, the Class, and the general public all funds acquired by means of any practice declared by this Court to be unlawful, deceptive or unfair;

D.      An order certifying the Class as defined herein;

E.      Assuming certification of the Class pursuant to Cal. Code Civ. Pro. §382, for distribution of any monies recovered on behalf of the general public, or the Class, via fluid recovery or *cy pres* recovery where necessary to prevent Defendants from retaining any of the profits or benefits of their wrongful conduct;

F.      For reasonable attorneys' fees and costs of investigation and litigation under, among other statutes, Cal. Code Civ. Pro. §1021.5 and 2033.420; and Cal. Welf. & Inst. Code §15657.5 *et seq.* or the common fund doctrine;

G.      For compensatory, special and general damages according to proof;

H.      For punitive and exemplary damages under Cal. Civ. Code §3294;

I.      For treble damages and penalties under Cal. Civ Code §3345; Cal. Bus. & Prof. Code §§6153, 6175.4, 6175.5 and 17206.1; and Cal. Ins. Code §789;

J.      For double damages under Cal. Prob. Code §859;

K.      For transfer of the wrongfully obtained monies and/or property under Cal. Prob. Code §§850-859 *et seq.*;

L.      Rescission of the policies under Cal. Ins. Code §§ 331 and 359;

M.      For costs of suit, pre-judgment, and post-judgment interest; and

N.      Such other and further relief as the Court may deem necessary or

appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues stated herein, and all issues so triable.

Dated: January 26, 2009

Respectfully submitted,
Samuel and Estella Rowe

By: Abraham Brustein,
one of their attorneys
**Attorneys for Plaintiffs Samuel Rowe and Estelle Rowe**

Abraham Brustein (ARDC#0327662)
**DiMonte & Lizak, LLC**
216 W. Higgins Road.
Park Ridge, IL 60068
Tel: (847) 698-9600
Fax: (847) 698-9623
Email: abrustein@dimontelaw.com

Larry A. Sackey (CA SBN 54474)
**Law Offices of Larry Sackey**
11500 West Olympic Blvd, Suite 550
Los Angeles, CA 90064
Tel: (310) 575-4444
Fax: (310 575-4520
Email: lsackey@sackeylaw.com

William Litvak (CA SBN 90533)
**Dapeer, Rosenblit & Litvak, LLP**
11500 W. Olympic Blvd. Suite 550
Los Angeles, CA 90064
Tel: (310) 477-5575
Fax: (310) 477-7090
Email: wlitvak@drllaw.com

Asher Levin (CA SBN 71650)
**Levy, McMahon & Levin**
16830 Ventura Boulevard, Suite 500
Encino, CA 91436
Tel: (818) 981-4556
Fax: (818) 981-4558
Email: AALxAAL@aol.com

Robert A. Horn (MO SBN 28176)
Joseph A. Kronawitter (MO SBN 49280)
**Horn Aylward & Bandy, LLC**
2600 Grand Boulevard, Suite 1100
Kansas City, Missouri 64108
Tel: (816) 421-0700
Fax: (816) 421-0899
Email: rhorn@hab-law.com
jkronawitter@hab-law.com