IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMUEL ROWE and ESTELLA ROWE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO.: 09-CV-00491 |
| ) | |
| BANKERS LIFE AND CASUALTY COMPANY ) | Judge Robert M. Dow, Jr. |
| and BANKERS LIFE INSURANCE COMPANY ) | |
| OF ILLINOIS ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss [54] Count I of Plaintiffs' first amended complaint. For the following reasons, the Court grants the motion and dismisses Count I of Plaintiffs' complaint. However, Plaintiffs are given 21 days from the date of this order to file an amended complaint if they believe that they can cure the pleading deficiencies identified below.

**I.   Factual Background[1]**

Plaintiffs, on behalf of a putative class of similarly situated individuals, brought this action against Defendants Bankers Life and Casualty Company and Bankers Life Insurance Company of Illinois, claiming, *inter alia*, that Defendants violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d), when Defendants fraudulently sold Plaintiffs a deferred annuity. Plaintiffs allege that Defendants, operating in part

---

[1] The following facts are taken from Plaintiffs' first amended complaint. The Court accepts the allegations in the complaint as true for present purposes. See, *e.g.*, *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004) (quoting *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000)). The Court takes no position at this juncture on whether any of the allegations are well-founded.

through their agents and affiliate organizations, marketed deferred annuities to senior citizens "despite the fact that such seniors are unlikely to receive any benefit from the annuity because of: the long-term nature of deferred annuity products and maturity dates * * * ; high surrender charges and penalties for early withdrawal and/or illusory bonus features[;] and rates and other product features which do not benefit annuity purchasers" (1st Am. Cmplt. ¶ 2). Plaintiffs aver that Defendants defrauded seniors by failing to disclose such material facts and risks associated with deferred annuities in their marketing materials and solicitations.

According to the complaint, Defendants implemented the allegedly fraudulent scheme through the two Defendant corporations, three affiliated corporations—KF Agency, Inc., Bankers Retirement Solutions, and UVEST Financial Services Group, Inc.—and independently contracted agents. Together, these entities allegedly constituted an "enterprise" as defined in RICO. 18 U.S.C. § 1961(4). Plaintiffs allege that Defendants conducted or participated in the conduct of the enterprise's affairs by exerting control over the independently contracted agents in various ways, including: failing to train them on the terms of deferred annuities and suitability guidelines for marketing deferred annuities; providing brochures and other marketing documentation to agents to use to "scare" potential customers about their financial security and to promote the benefits of deferred annuities; requiring agents to agree to adhere to certain sales protocols and procedures, including using the aforementioned marketing materials; requiring agents to submit any outside marketing materials to Defendants for review and approval prior to use; and requiring agents to follow scripts when soliciting potential consumers.

In addition, Plaintiffs allege that Defendants "induce[d], condone[d] and encourage[d] their Agents to engage in aggressive and predatory marketing tactics"—such as persuading consumers to liquidate other investments in order to purchase Defendants' deferred annuities—

by paying them bonuses and commissions for selling deferred annuities (1st Am. Cmplt. ¶ 37). Defendants purportedly exercised further control over agents by terminating or threatening with termination agents who produced low sales of deferred annuities. Oddly, the complaint also alleges that Defendants failed to provide sufficient oversight of agents so as to restrict abusive sales tactics in which agents presumably engaged independently—an allegation that runs counter to Plaintiffs' "exertion of control" claim.

Plaintiffs allege that KF Agency, Inc.—which recruits and refers agents to Defendants—and Bankers Retirement Solutions and UVEST Financial Services Group, Inc.—which provide "investment-related transaction support" to Defendants—along with the agents and the Defendant corporations themselves, collectively constituted an "enterprise" that participated in these "abusive" sales and marketing practices. Specifically, Plaintiffs claim that KF Agency, Inc., UVEST Financial Services Group, Inc., and the independently contracted agents provided Defendants with a systematic means to control misleading information provided to potential consumers, and that Defendants' participation in the enterprise was a key factor in the perpetration of the alleged racketeering scheme.

Plaintiffs assert that Defendants used interstate mail and wire to repeatedly transmit and receive marketing materials and to process consumer applications and pay agents' commissions, in violation of the mail and wire fraud statutes. 18 U.S.C. §§ 1341, 1343. Plaintiffs claim that in so doing, Defendants engaged in and conspired to engage in a pattern of racketeering activity in violation of §§ 1962(c) and 1962(d). As a result, Plaintiffs and similarly situated class members allegedly have been harmed by Defendants' deferred annuities marketing and sales practices as well as by the penalties, loads, and fees associated with the annuities.

**II.     Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citations omitted). A complaint must satisfy the several requirements of Rule 8 to survive a 12(b)(6) motion to dismiss. Fed. R. Civ. P. 8. First, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 550 U.S. at 579-80.

Where a complaint sounds in fraud, the allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004)). Rule 9(b) states that for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino*, 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b), read in conjunction with Rule 8, requires that

4

Plaintiffs plead "the time, place and contents" of the purported fraud. *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720 (N.D. Ill. 1993). "The purpose of this heightened pleading requirement is to 'force the plaintiff to do more than the usual investigation before filing his complaint.'" *Amakua Dev. LLC v. H. Ty Warner*, 411 F. Supp. 2d 941, 953 (N.D. Ill. 2006) (citations and internal quotation marks omitted).

Plaintiffs initially state that they "do not assert any claims based on fraud, nor do they ground any of their current claims in fraud." Yet, they explicitly base their RICO claim on allegations of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, respectively. Insofar as Rule 9(b) applies to all "averments of fraud," and not simply stand-alone claims of fraud, Plaintiffs' RICO claim must be viewed under the heightened pleading standard of Rule 9(b). *Borsellino*, 477 F.3d at 507 (citations and internal quotation marks omitted); *Limestone Dev. Corp. v. Village of Lemont, Illinois*, 520 F.3d 797 (7th Cir. 2008) (requiring for RICO claim "a fuller set of factual allegations" to satisfy 9(b) and to show that claim is not "largely groundless").

There is a split of authority concerning whether Rule 9(b) must be satisfied with respect to every element of a fraud-based RICO claim, or whether the less rigorous Rule 8 pleading standard applies to non-fraud elements of the claim. Compare *In re Sumitomo Copper Litig.*, 95 F. Supp. 451, 454-56 (S.D.N.Y. 1998) (finding that RICO enterprise allegations must meet only pleading requirement of Rule 8 but wire and mail fraud allegations must meet heightened pleading requirements of Rule 9(b)); *Am. Ins. Serv. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240, 246-47 (S.D.N.Y. 1996) (holding that "enterprise," "control," and "conspiracy" allegations need not be pleaded with particularity); and *Gubitosi v. Zegeye*, 946 F. Supp. 339, 346 n.4 (E.D. Pa. 1996) (holding that "Fed. R. Civ. P. 9(b) does not require that allegations of conspiracy be

5

alleged with particularity; only allegations of fraud have this requirement under the rule"); with *Brannon v. Boatmen's Bancshares, Inc.*, 952 F. Supp. 1478, 1482 (W.D. Okla. 1997) (ruling that each element of RICO violation must be pleaded with particularity, citing *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992)). The Seventh Circuit has not expressly resolved the question. It has, however, explicitly applied Rule 8 to the enterprise element of RICO in at least one case. See *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (ruling that amended complaint alleging a RICO violation "is so scanty and its allegations [as to enterprise] so vague that it * * * fails to satisfy the notice requirement of Rule 8"). The Court therefore will apply Rule 8 to the non-fraud elements of RICO and Rule 9(b) to the allegations of fraud-based racketeering acts.

**III.    Analysis**

As noted above, at the motion to dismiss stage, the Court must accept as true all of the well-pleaded facts alleged by Plaintiffs and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). Plaintiffs' complaint sets forth a federal civil RICO claim as well as various state and common law claims[2] against Defendants. Defendants have moved to dismiss Plaintiffs' RICO claim, arguing that Plaintiffs failed to sufficiently plead a § 1962(c) violation, and in turn cannot maintain a § 1962(d) conspiracy claim. Defendants do not contest the viability of Plaintiffs' other claims.

Count I of Plaintiffs' complaint alleges that Defendants and various affiliates and agents violated § 1962(c) of RICO by committing mail and wire fraud in violation of §§ 1341 and 1343, respectively. In addition, Count I alleges a conspiracy among the Defendants and various

---

[2]    Plaintiffs assert the following state and common law claims: breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of the covenant of good faith and fair dealing, unjust enrichment, financial elder abuse, unlawful and unfair business acts or practices, and disseminating false and misleading statements.

6

affiliates and agents to violate § 1962(c), thus rendering them liable under RICO's conspiracy provision. 18 U.S.C. § 1962(d).

Section 1962(c) of RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A plaintiff stating a claim under subsection (c) must therefore allege that the defendant (1) conducted or participated in conducting the activities (2) of an enterprise (3) through a pattern (4) of racketeering. See *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).

To satisfy the conduct element of RICO, the defendant must have played some part in the operation or management of a RICO enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 184-85 (1993). Liability hinges on whether defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their own affairs. *Id.* at 185.

A plaintiff satisfies the enterprise element upon showing the existence of "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). The enterprise must be "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Richmond*, 52 F.3d at 644 (citing *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)). An "association-in-fact" enterprise is "'a group of persons associated together for a common purpose of engaging in a course of conduct' and can be shown 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Kaye v. D'Amato*, 357 Fed. Appx. 706 (7th Cir. 2009) (quoting *Boyle v. United States*, 129 S.Ct. 2237,

2243 (2009)). The RICO "enterprise" must be separate and distinct from the RICO "person" (*i.e.*, the defendant). *Haroco, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago*, 747 F.2d 384, 401-02 (7th Cir. 1984).

Together, the first two elements of RICO demand that a defendant do more than simply use its agents or affiliates to perpetrate racketeering acts. *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323-24 (7th Cir. 1998). The defendant must instead use "its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality." *Id.* at 1324 (citing *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997)). The Seventh Circuit has held that a RICO claim fails this "family resemblance" test where a corporation merely does business through agents rather than through employees. *Fitzgerald*, 116 F.3d at 227. In other words, where the role of a corporation's agents in perpetrating the alleged racketeering acts "is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the [defendant corporation] plus its * * * agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute." *Id.* at 228. Use of the enterprise must rather provide defendants with "an additional power to evil"—a power that the defendant would otherwise not possess. *Id.* at 227.

A RICO claim satisfies the pattern requirement if "sufficient facts * * * show that the [defendants] engaged in a pattern of racketeering activity," which "consists, at a minimum, of two predicate acts of racketeering (committed within a ten-year time period)." *Slaney v. The Int'l Amateur Athletic Federation*, 244 F.3d 580, 598-99 (7th Cir. 2001) (citing *Goren*, 156 F.3d at 728); see also *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 965 (7th Cir. 2000).

The final element of racketeering activity requires showing that defendants committed acts violating one or more of the statutes listed in § 1961(1), which includes §§ 1341 and 1343, mail and wire fraud, respectively. A plaintiff alleging mail or wire fraud-based racketeering acts must plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998) (internal citations and quotation marks omitted); see also *Slaney*, 244 F.3d at 599.

The RICO conspiracy statute makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To state a claim for conspiracy under § 1962(d), a plaintiff must allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren*, 156 F.3d at 732 (footnote omitted). The defendant "must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner." *Brouwer*, 199 F.3d at 967.

Here, Plaintiffs allege that Defendants exerted control over an enterprise—comprising Defendant corporations, KF Agency, Inc., Bankers Retirement Solutions, UVEST Financial Services Group, and independently contracted agents—in order to defraud senior citizens by marketing and selling to them deferred annuities. Plaintiffs claim that Defendants solicited and sold a deferred annuity to Plaintiffs in July 2007, and five months later charged Plaintiffs a surrender fee to liquidate their annuity at a "significant" loss. Defendants allegedly used interstate mail and wire to transmit marketing materials to Plaintiffs, and to transmit payments

9

and documents to effectuate the sale. Plaintiffs claim that Defendants have engaged in similar acts on "thousands" of other occasions, to the detriment of putative class members. In so doing, Defendants allegedly violated § 1962(c) of RICO. Plaintiffs also allege that Defendants conspired with the enterprise to violate § 1962(c), and so violated subsection (d) of RICO.

Even applying the less rigorous Rule 8 standard, the scant facts set forth in Plaintiffs' complaint do not suffice to plead the conduct and enterprise elements of RICO. Plaintiffs fail to state how KF Agency, Inc., Bankers Retirement Solutions, and UVEST Financial Services advanced or assisted in the perpetration of Defendants' alleged criminal activity. Rather, the complaint simply asserts that the three corporate entities, together with Defendants and its independently contracted agents, are a RICO enterprise. Nor do Plaintiffs provide even minimal factual support for how the three corporate entities are instrumentalities of Defendants' alleged criminality or how their roles are more than merely incidental to the alleged criminality. See *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d at 1323-24; *Fitzgerald*, 116 F.3d at 228. Their claim as to how these three corporations make up an enterprise thus is little more than a tautology. See *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (ruling that to survive a motion to dismiss for failure to state a claim an allegation cannot merely be a "naked assertion devoid of further factual enhancement").

Further, Plaintiffs' allegations that the independently contracted agents form part of the enterprise do not pass muster under the *Fitzgerald* "family resemblance" test. *Fitzgerald*, 116 F.3d at 227. Their role "differ[s] not at all from what it would be if these agents were the employees of a totally integrated enterprise." *Id.* at 228. This leaves only the two Defendant corporations remaining in the alleged enterprise. But as the statute requires that the RICO

"person" be separate and distinct from the RICO "enterprise," Defendants alone cannot comprise the enterprise. *Fitzgerald*, 116 F.3d at 226 (citations omitted).[3]

Plaintiffs are left, then, with an empty enterprise. Because proper pleading of the enterprise element is necessary to proceed on a RICO complaint, Plaintiffs' allegations are insufficient to state a claim under the statute. Plaintiffs' RICO claim therefore must be dismissed on 12(b)(6) grounds.

It also bears mentioning that had Plaintiffs sufficiently pleaded an enterprise, their RICO claim still would be subject to dismissal on Rule 9(b) grounds. Boilerplate language as to omissions of material facts is not, by itself, sufficient to plead fraud. *Fujisawa*, 814 F. Supp. at 726-27. Such language would need to be "augmented with ample references to specific dates, statements, documents and contents." *Id.* at 727. In *Fujisawa*, as here, "[t]he gravamen of the complaint is not the submission of false data * * *; rather, it is [Defendant's acts of omission" in revealing material facts and risks. *Id.* Where a fraud is perpetrated through omission, "the plaintiff must plead the type of facts omitted, the type of document in which they should have appeared and the way in which their omission made the documents misleading." *Fujisawa*, 814 F. Supp. at 727; see also *U.S. Data Corp. v. Realsource Inc.*, 2008 WL 4369766, at *6 (N.D. Ill. Sept. 22, 2008).

Plaintiffs allege that Defendants' marketing materials "are designed to appeal to consumers," "downplay" the risks of deferred annuities, and "drafted so that the average person cannot readily understand the terms" (1st Am. Cmplt. ¶¶ 45-47). Yet, the complaint fails to provide any specific facts as to the contents of any of the allegedly fraudulent materials or the

---

[3] Defendants also contend that Plaintiff's RICO claim must fail because, they argue, an association-in-fact enterprise may consist only of "individuals," not corporate entities. The Court must reject that argument because it directly contravenes Seventh Circuit authority in *United States v. Masters*, 924 F.2d 1362, 1366 (7th Cir. 1991).

dates on which such transmissions were made or received. Indeed, the only facts pleaded with any detail are the names of the two independently contracted agents, the dates of their visits to Plaintiffs, and two quotes, presumably from a letter by Defendants, thanking Plaintiffs for their business. 1st Am. Cmplt. ¶¶ 61-64, 71-72.

The Seventh Circuit has held that "[s]pecificity requirements may be relaxed * * * when the details are within defendant's exclusive knowledge." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994). Here, however, Plaintiffs allege that they received Defendants' fraudulent brochures and other marketing information. Because the fraudulent information is at Plaintiffs' disposal, they do not risk being placed in a "Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery," *Emery*, 134 F.3d at 1323, and the specificity requirements therefore need not be relaxed.

Plaintiffs' thin description of the "who" and "when" of the alleged fraud, without more specificity as to its content, is fatally defective under the heightened pleading requirements of Rule 9(b). Count I of Plaintiff's complaint on Rule 9(b) grounds thus is subject to dismissal on Rule 9(b) grounds as well.

## IV. Conclusion

For these reasons, Defendants' motion to dismiss Plaintiffs' RICO claim [54] is granted. Plaintiffs are given 21 days from the date of this order to file an amended complaint if they believe that they can cure the pleading deficiencies identified above.

Dated: September 13, 2010                       _____
                                                                Robert M. Dow, Jr.
                                                                United States District Judge