IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SAMUEL ROWE** and **ESTELLA ROWE**, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 09 C 491 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| **BANKERS LIFE AND CASUALTY COMPANY** and **BANKERS LIFE INSURANCE COMPANY OF ILLINOIS**, | ) ) ) ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Samuel and Estella Rowe ("Plaintiffs") bring this motion to compel Defendants Bankers Life and Casualty Company and Bankers Life Insurance Company of Illinois ("Bankers Life") to produce certain insurance examination documents. The Court rules on this motion under District Judge Robert M. Dow Jr.'s referral for a decision pursuant to N.D. Ill. Rule 72.1. Based on the parties' briefs and a hearing held on April 18, 2011, the Court finds that Plaintiffs' motion is denied.

**I.  Background**

Plaintiffs have brought this action on behalf of themselves and all similarly-situated persons against Bankers Life for the allegedly improper sales of deferred annuities to senior citizens. Claiming various common law actions, as well as violations of the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 28 U.S.C. § 1961, *et seq.*, Plaintiffs allege in their Second Amended Complaint that Bankers Life formulated a deceptive scheme involving an untrained sales force, high-pressure tactics, and opaque sales literature designed to induce senior citizens to purchase annuities from Bankers Life. On May 28, 2009, Plaintiffs issued their First Request for Production of Documents. Request No. 38 asks for the production of "all market conduct examinations sent between any State's Department of Insurance and Bankers Life that relate to the marketing, advertising, servicing, underwriting, or sale of Your Annuities to Senior Citizens." Bankers Life responded, in part, with the familiar objection that Plaintiffs' request was overly broad, unduly burdensome, and irrelevant.

Notwithstanding, Bankers Life agreed to produce documents responsive to governmental inquiries to the extent that the requested documents were not confidential or were not otherwise barred from disclosure under any state law or regulation. Bankers Life informs the Court in its response that it has already produced six "market conduct examinations" to the Plaintiffs. A market conduct examination is a form of report made by state insurance agencies in order to assess whether insurance companies are in compliance with a state's laws and regulations. *See Solarchick v. Metropolitan Life Ins. Co.*, No. 01-444, 2006 WL 1308073, at *1 (W.D. Pa. May 10, 2006) (providing descriptions of market conduct examinations). Bankers Life, however, refused to produce a report by the California commissioner of insurance. In its initial response to Request No. 38, Bankers Life stated that no California market examination existed for the time period included in Plaintiffs' request. Bankers Life submitted a revised response that claimed the company could not produce the report because such disclosure is prohibited by the California Insurance Code.

## II. Discussion

A party may file a motion to compel under Fed. R. Civ. P. 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed. R. Civ. P. 37(a). Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules. *Wilstein v. San Tropai Condo. Master Assoc.*, 189 F.R.D. 371, 375 (N.D. Ill. 1999). Federal Rule of Civil Procedure 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discoverable information is not limited to evidence admissible at trial. Instead, such information is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, while the scope of permissible discovery is broad, it is not unlimited. A court can limit discovery if the court believes it is unreasonably cumulative, if the party seeking discovery has already had ample opportunity to do so, or if the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

### A. Timeliness

Bankers Life first argues that the Court should deny the instant motion because discovery closed in this case on July 21, 2010, and Plaintiffs' motion is late. Plaintiffs answer this objection by noting that discovery has been taken on a "rolling basis," with various documents produced by Bankers Life after the cutoff date, and by claiming that Bankers Life fails to show how it would be prejudiced by responding to Request No. 38 at this time. Standing alone, neither of these arguments is dispositive, as no clear standard controls when a motion to compel

should be considered after fact discovery has closed. The Federal Rules of Civil Procedure do not address this issue. Instead, courts are given "extremely broad discretion in controlling discovery" and can deny motions to compel as untimely when such action is appropriate under the circumstances. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005); *Wilstein*, 189 F.R.D. at 375.

Bankers Life's argument gives the Court some pause, as Plaintiffs do not seriously argue why this motion could not have been brought at an earlier time. Nevertheless, two factors persuade the Court that the parties', as well as the Court's, interests are best served by finding the motion not to be barred as untimely. First, the allegations involved in this class action are complex; Plaintiffs' Second Amended Complaint is seventy-five pages long and contains fifty-three attachments. Courts have shown a willingness to consider motions to compel that could have been filed at an earlier date when extensive fact and expert discovery may be involved in a case. *See U.S. S.E.C. v. Sentinel Mgt. Group, Inc.*, No. 07 C 4684, 2010 WL 4977220, at *6 (N.D. Ill. Dec. 2, 2010). Second, the discovery Plaintiffs seek is very limited. Bankers Life does not dispute that it possesses the document that Plaintiffs request, nor does it argue in its response that producing the California market examination would be burdensome. Were that the case, the Court would be more reluctant to consider a motion that Plaintiffs could have filed at a more reasonable time after Bankers Life submitted its revised response to Request No. 38 on December 18, 2009. As this case has not been set for trial, and as the class certification issue has not been decided, the Court finds that Plaintiffs' motion should not be dismissed as untimely.

### B. The California Insurance Code

Bankers Life argues that the California Insurance Code prevents it from disclosing a market conduct report that the California insurance commissioner undertook in relation to Bankers Life. Section 735.5 of the California Insurance Code governs the publication and disclosure of preliminary and final examinations made by the California commissioner of insurance. Subsection (a) of § 735.5 authorizes the commissioner to exercise discretion in releasing examination reports and information in the furtherance of legal or regulatory actions; subsection (b) authorizes the commissioner to provide the same information to a variety of state and federal agencies, either with the relevant insurance company's consent or with a written agreement by the receiving agency not to disclose the information. Cal. Ins. Code § 735.5(a) & (b). Neither subsection applies to this case. Section 735.5(c), however, provides:

> All working papers, recorded information, documents, and copies thereof produced by, obtained by, or disclosed to the commissioner or any other person in the course of an examination made pursuant to this article shall be given confidential treatment and are not subject to subpoena and shall not be made public by the commissioner or any other person, except to the extent provided in subdivision (a) or (b).

Cal. Ins. Code § 735.5(c).

As an initial matter, both parties assume that the provisions of the California Insurance Code govern how the Court should decide this evidentiary dispute. The ground for relying on California's privilege law is not self-evident under the facts of this case, however, and neither party addresses the complex issues that can arise in applying state-law privileges to federal lawsuits. When civil actions arise under a court's diversity jurisdiction, a court determines privileges in accordance with state law. *Budinich v. Beckton Dickinson & Co.*, 486 U.S. 196, 198 (1988) ("[S]tate law generally supplies the rules of decision in federal diversity cases . . . .");

*Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008). Plaintiffs bring this action under both RICO and state common law. When a plaintiff's principal claim arises under federal law, with supplemental jurisdiction exercised over state-law allegations, "the federal common law of privileges should govern all claims of privilege raised in the litigation." *Wilstein*, 189 F.R.D. at 376.

In this case, however, Plaintiffs do not allege that their common law claims fall within the Court's supplemental jurisdiction. Instead, they rely on the Class Action Fairness Act ("CAFA") to specifically invoke diversity jurisdiction, as well as federal question jurisdiction under RICO. CAFA eliminates the ordinary requirement of complete diversity between parties and authorizes federal courts to exercise diversity jurisdiction over a class action if only one representative plaintiff is diverse from one defendant, and the aggregate claims exceed $5 million. 28 U.S.C. § 1332(d). The Second Amended Complaint makes such allegations and cites the diversity statute, 42 U.S.C. § 1332, as a basis for this Court's jurisdiction. (Second Amend. Comp. at ¶ 14).

The parties overlook that courts do not necessarily apply state privilege laws when, as here, jurisdiction arises under both federal question jurisdiction and the diversity statute. *See Eagle Precision Techs., Inc. v. Eaton Leonard Robolix, Inc.*, No. 03 CV 352, 2005 WL 6453567, at *4 (S.D. Cal. May 12, 2005) (citing cases). As several courts have noted, "it is not immediately clear what law should apply" when a plaintiff invokes a court's jurisdiction in the manner Plaintiffs have done here. *See*, *e.g.*, *Garza v. Scott and White Memorial Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005); *see also Martin v. Lafon Nursing Facility of Holy Family, Inc.*, 244 F.R.D. 348, 351 (E.D. La. 2007). Nevertheless, as both parties in this case rely on the

California Insurance Code for the rule of decision, the Court will not disturb their assumption and will interpret that statutory provision as the parties request.

Plaintiffs first argue that only the California commissioner of insurance holds the privilege provided under § 735.5. The Court agrees with this analysis. On its face, subsection (c) suggests that the insurance commissioner is not the only person who might release market report information; the statute prohibits the public release of such information either by the commissioner "or any other person." Cal. Ins. Code § 735.5(c). California courts, however, have agreed with Plaintiffs that "the Insurance Commissioner is the sole holder of the privilege[.]" *Gallimore v. State Farm & Casualty Ins. Co.*, (2003) 102 Cal. App. 4th 1388, 1395 n.6. Federal courts are bound by a state supreme court's interpretation of state law. *Finch v. Ford Motor Co.*, 327 F. Supp.2d 942, 943-46 (N.D. Ill. 2004). In the absence of any analysis of § 735.5 by the California Supreme Court, however, this Court accepts the appellate court's interpretation in *Gallimore* of the California Insurance Code.

Plaintiffs rely on *Gallimore* to argue that, as Bankers Trust does not hold the privilege provided under § 735.5, it cannot use it to protect the market report that Plaintiffs seek. On this point, however, Plaintiffs press too far, as *Gallimore* strongly suggests that Bankers Life can do just what Plaintiffs object to. In *Gallimore*, an insured plaintiff brought suit against an insurance company, alleging misconduct in the handling of claims. The plaintiff relied primarily on a market conduct examination it had obtained outside the discovery process, and the insurance company sought dismissal on the ground that plaintiff's claim was based on confidential

information.[1]  The trial court granted dismissal under California's "anti-SLAPP" statute (strategic lawsuit against public participation statute).  Cal. Code Civ. P. § 425.16.

In reversing the trial court's dismissal, the appellate court took note that the insurer had argued that the plaintiff could not prevail on its claims at trial because the market conduct report was confidential under § 735.5.  According to the court, however, the relevant issue for dismissal was the nature of the allegedly wrong acts the insurance company undertook, not the evidence that the plaintiff would need to produce in order to substantiate its allegations.  *Gallimore*, 102 Cal. App. 4th at 1400.  Nevertheless, the *Gallimore* court noted that the insurance company "may well be correct" that the market conduct report was, in fact, confidential, privileged, and inadmissible at trial.  *Id*.  In so doing, the court left undisturbed the trial court's ruling that, contrary to the plaintiff's contention in that case, the privilege inherent to the insurance report under § 735.5 was not waived by an unauthorized dissemination of it, and *Gallimore* quoted the trial court's decision on this issue at some length:

> To conclude otherwise would be violative of the statutory provisions and underlying public policy giving rise to the privilege in the first instance.  Those insurers that submit information to the Insurance Commissioner, believing it to be confidential and not usable against them in a proceeding at law, would face an unforeseen risk if some third party released such material in a public forum.  The risk, of course, would be the filing of lawsuits against insurers based upon information that was released to the Commissioner under the good faith belief that it could not be used against them.

Id. at 1395 n.6.  This language clearly finds that, notwithstanding the fact that the California insurance commissioner holds the privilege provided for under § 735.5, an insurance company like Bankers Life can still stand behind the confidentiality of such a report, as well as the

---

[1]  Although not entirely clear, the plaintiff appears to have obtained the report from a website maintained by the California Senate.  *Gallimore*, 102 Cal. App. 4th at 1395 n.6.

- 8 -

information submitted by the company as part of the report, as a matter of California public policy.

The Court sees no reasonable basis why *Gallimore* does not support Bankers Life's position in this dispute. As Bankers Life notes, another California state court has recently reached the same conclusion on this issue. *See Paul v. Blue Shield of Cal.*, No. RG 08396057 *et al.*, 2010 WL 4919551, at *1 (Cal. App. Dep't Super. Ct. June 18, 2010) ("Defendant shall not produce any documents or information that fall within the scope of California Insurance Code section 735.5(c) as such documents and information are confidential). As this Court must follow state court interpretations of state law, *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635-36 (7th Cir. 2007), the Court agrees with *Gallimore* and *Paul* that Bankers Life's California market conduct examination is a confidential document that Bankers Life is not required to produce.

### III. Conclusion

For all these reasons, the Court finds that the California market conduct report is privileged, and Plaintiffs' motion to compel [Dckt. 147] is denied.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
**Dated:** May 18, 2011. United States Magistrate Judge